UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

TIMOTHY P. GRAY,

Plaintiff,

-vs-

GARLOCK SEALING TECHNOLOGIES, LLC,

Defendant.

---

No. 06-CV-6028 CJS

DECISION AND ORDER

APPEARANCES

For plaintiff: Timothy P. Gray, Pro Se
35 Carriage Court
Farmington, New York 14425

For defendant: Peter A. Jones, Esq.
Subhash Viswanathan, Esq.
Bond, Schoeneck & King, PLLC
One Lincoln Center
Syracuse, New York 13202

INTRODUCTION

This is an action in which the plaintiff Timothy Gray ("plaintiff"), proceeding *pro se*, alleges that his former employer, defendant Garlock Sealing Technologies, LLC ("defendant") discriminated against him, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq*., by failing to promote him. Now before the Court is defendant's motion [#3] to dismiss and for summary judgment. For the reasons that follow, defendant's application to dismiss one of plaintiff's claims

pursuant to 29 U.S.C. § 296(d) is granted, the application for summary judgment as to the remaining claims is stayed temporarily, defendant is directed to provide plaintiff with certain discovery, and plaintiff's time in which to submit additional evidence in opposition to defendant's summary judgment application is extended.

PROCEDURAL HISTORY

Plaintiff commenced this action on January 17, 2006. Defendant waived service of the summons and complaint on March 30, 2006. In lieu of answering the complaint, and prior to any discovery in this action, defendant filed the subject motion, designated as a motion "pursuant to Rules 12(b)(1), 12(b)(6), and 56 of the Federal Rules of Civil Procedure," on May 2, 2006.[1] In support of the motion, defendant submitted various materials outside of the complaint, including affidavits and exhibits, and plaintiff responded by submitting his own affidavit and various exhibits. Plaintiff contends, however, that he requires discovery in order to more fully respond to defendant's application.

BACKGROUND

Unless otherwise noted, the following are the facts of this case, viewed in the light most favorable to plaintiff. Defendant, which is headquartered in Palmyra, New York, is a manufacturer of fluid sealing products, including seals and gaskets. Defendant's Equal Employment Opportunity Policy stated, in relevant part, that "[i]t shall be the Company's policy, as warranted, to promote internally those employees whose past work performance demonstrates their qualification for promotion." Defendant

---

[1] Defendant served an *Irby* notice on the *pro se* plaintiff as required by Rule 56.2 of the Local Rules of Civil Procedure.

contends in this action, however, that it "does not give any preference to current Company employees over external candidates in filling salaried positions. In all circumstances, the Company's goal is to hire the most qualified applicant for the position, regardless of whether the applicant is a current employee or an external applicant." (Def. Stmt. of Facts ¶ 7). Defendant hired plaintiff in 2003 as a Press Operator. Two months later, defendant promoted plaintiff to the position of "Gylon technician/Calendar operator," which plaintiff describes as "an unskilled and lower paying production job." (Pl. Stmt. of Facts ¶ 3). During the ensuing two years that plaintiff was employed with defendant, he applied for four different positions or promotions with defendant.

First, in April 2004, plaintiff applied for the position of Manufacturing Engineer in defendant's Gylon Department. The job posting for this position indicated that defendant was seeking an applicant who possessed a "BS degree in Engineering or equivalent." Plaintiff applied for the position, though he did not hold a bachelor's degree. Instead, he indicated on his application that he held three associate's degrees, consisting of an associate's degree in Industrial Technology, an associate's degree in Computer Science, and an associate's degree in Computer Information Systems. (Pl. Aff. [#13] p. 20). Plaintiff's resume, however, indicated that he held only two associate's degrees, those being in Computer Science and Electrical Engineering Technology. (*Id*. at p. 21). Plaintiff further stated on his application that he had four years of experience working as a metal fabricator, and had taken courses in electricity, machining, heating and air conditioning, plumbing, and masonry. Plaintiff's resume stated that he had work experience as a "Mechanical Maintenance Technician" and as

a "Power Plant Technician." With regard to the Mechanical Maintenance Technician's position, plaintiff's resume stated that, for approximately one year, he performed maintenance on production and material handling machinery, tested and maintained equipment involving "security, safety and environmental responsibility of the plant," and assisted an engineering department in "redesigning and fabricating any of the plant's existing equipment in addition to installing any newly acquired machinery." As for the Power Plant Technician's position, plaintiff's resume stated that, for approximately six years, he had worked for an electric and gas utility company, where he "maintained and calibrated the plant's instrumentation and automated control systems," "performed testing on the turbine/generators and their associated sub-systems," and "assisted the plant (and the company) in meeting both Federal and State mandated environmental requirements for air and water."

Defendant did not interview or hire plaintiff for the Manufacturing Engineer position. Defendant contends that it did not select plaintiff for an interview because he did not possess a BS degree in engineering or the equivalent. Instead, defendant interviewed four individuals, all of whom "possessed at least a BS degree in Engineering and had extensive experience working in an engineering capacity." (Hurley Aff. ¶ 6). The person who was eventually awarded the position, in July 2004, held a BS degree in Mechanical Engineering and "had nearly ten years of experience working for two manufacturing companies in various engineering functions, including Manufacturing Engineer and Quality Control Engineer. (Hurley Aff. ¶ 9, Ex. E). Defendant states that it did not consider plaintiff's age in making this employment decision.

Plaintiff applied for a second position, that of a Network Systems Technician, in

August 2004. The job posting for the position indicated that defendant was seeking applicants with the following qualifications: "Degree in computer related field or equivalent expertise. Field certifications for specific technology/vendor tracts, 4+ years providing server and network services, experience supporting a regionally diverse IT network in a manufacturing environment, strong analytical and problem solving skills, and excellent communication skills." When he applied for this position, plaintiff submitted essentially the same resume as before, with the exception that he had added two associate's degrees to the resume, namely, an associate's degree in Computer Information Systems and an associate's degree in Computer Technology and Networking. Plaintiff further stated, on his application, that he had "over 5 years of employment as a field service technician with Decision Data Corporation performing computer repair," though this information did not appear on his resume. Defendant's Information Technology Manager, Ed Wallace ("Wallace"), states that he reviewed plaintiff's application and concluded that he did not have the necessary work experience for the position. (Wallace Aff. ¶ 5) (Noting that plaintiff had not indicated "that he had the requisite field certifications or that he had ever worked in the IT field."). According to Wallace, he had decided not to interview plaintiff, until he heard from defendant's Human Resources Specialist, Dawn Wick ("Wick"), that plaintiff "continued to make inquiries about the position and continued to ask why he was not being granted an interview." (*Id*. at ¶ 7). Wallace states that because of plaintiff's interest in the position, and to "assist [plaintiff] in understanding the type of work experience and qualifications that he would need in order to obtain [such] a position," he interviewed plaintiff. Wallace states, however, that the interview only confirmed his opinion that

plaintiff was not qualified. For example, Wallace states that in response to specific hypothetical questions that he posed, plaintiff gave vague answers that did not demonstrate technical knowledge or problem-solving ability (*Id*. at ¶ 8), though plaintiff denies this. Defendant eventually hired an individual for the position who held a BS degree in Information Technology, was a "Microsoft Certified Professional," and who had "over five years of work experience in the IT field." (*Id*. at ¶ 9). According to Wallace, this individual had already worked for defendant as a contractor for nine months, during which time Wallace had received several positive comments about the individual's technical expertise and "people skills." (*Id.*). Plaintiff learned that he was not hired for position on or about October 29, 2004. (Pl. Memo of Law ¶ 7). Defendant states that it did not consider plaintiff's age in making this employment decision.

In December 2004, plaintiff applied for a third position, that of Engineering Technician in defendant's Klozure Dynamic Seals Department. Defendant's job listing for the position indicated that applicants were required to have the following experience: "Associate's Degree or equivalent experience. 5 years or more experience in technical role. Must have a high level of energy, excellent organizational , communication and computer skills. Individuals must have excellent technical problem solving skills. Must be a team player." (Merlau Aff. Ex. A). Plaintiff stated on his application that he held an Associate's degree in Electrical Engineering, had "5+ years" of experience in metal fabrication and maintenance, "6+ years" of experience as a power plant technician, and "various computer related degrees (computer science/info. systems, etc.) completion of various adult education (B.O.C.E.S. night) courses." Plaintiff did not submit a resume along with the application. (Merlau Aff. ¶ 7; Pl. Aff. pp. 30-31). Tom Merlau ("Merlau"),

the Engineering Manager of the Klozure Dynamic Seals Department, states that, based upon plaintiff's application, he did not believe that plaintiff was qualified for the position. Merlau decided, nonetheless, to interview plaintiff, "to find out more information about his work experience and qualifications." (Merlau Aff. ¶ 5). Merlau interviewed plaintiff on December 15, 2004, and states that, "It was clear to me during the interview that Mr. Gray did not have sufficient experience in process development or process improvement to effectively perform the functions of the Engineering Technician position. Furthermore, Mr. Gray's response [sic] to my questions showed a lack of problem solving skills." (Merlau Aff. par 6). Merlau states, though, that he scheduled a second interview with plaintiff, because plaintiff had not provided a resume with his application or at the initial interview, and because he wanted "to ensure that [he] had all of the information [he] needed regarding [plaintiff's] work experience and qualifications." (*Id*. at ¶ 7). Merlau states that the second interview did not change his opinion that plaintiff was unqualified for the position. Defendant eventually granted the position to an individual with a BS degree in Mechanical Engineering Technology and "nine years of work experience on manufacturing lines, applying lean manufacturing techniques." (*Id*. at ¶ 8). Notably, this individual was already employed by defendant as a Production Supervisor. Defendant informed plaintiff of its decision on or about January 17, 2005. Defendant contends that it did not consider plaintiff's age in making this employment decision.

Plaintiff applied for a fourth position, as a Senior PC (Personal Computer) Technician, in defendant's IT (Information Technology) Department in March 2005. Defendant's job listing for the position indicated that applicants were required to have

the following experience:

> Associate's Degree in Computer Science or equivalent expertise. Field certifications for specific technology/vendor tracks required (i.e. MS Certifications[)] Experience supporting IT in a manufacturing environment. Eight plus years providing PC and network services to a nationally dispersed business operation. Strong analytical and problem solving skills, and excellent communication skills.

(Wallace Aff. Ex. F). Defendant's application for the position listed his four associate's degrees, and further stated that he had "over 5 years of employment with Decision Data Corporation as a field service technician performing computer repair." (Wallace Aff. Ex. G). Plaintiff did not submit a resume with his application. (Wallace Aff. ¶ 15; Pl. Aff. p. 34). Wallace, who had previously interviewed plaintiff for the Network Systems Technician position, states that he declined to interview plaintiff for this new position because he determined that plaintiff was not qualified. Defendant eventually awarded the position, in July 2005, to an individual with a BS degree in Information Technology, and who "was Microsoft certified for XP, and had substantial work experience in the IT Departments of three different companies." (Wallace Aff. ¶ 18). This individual was not previously employed by defendant prior to the job posting for the Senior PC Technician's position, although she had been employed by defendant as a temporary employee for several months by the time she was awarded the full-time position in July 2005. Defendant contends that it did not consider plaintiff's age in making this employment decision.

Plaintiff voluntarily resigned his employment with defendant on or about August 8, 2005. Plaintiff filed a complaint of age discrimination with the Equal Employment Opportunity Commission ("EEOC") on August 22, 2005. The EEOC dismissed the

complaint and issued plaintiff a “right to sue” letter on November 8, 2005. Plaintiff commenced the subject action on January 17, 2006. As discussed above, defendant then filed the subject motion, in lieu of serving an answer to the complaint, and prior to either party conducting discovery in this case. Defendant’s motion is made pursuant to Rules 12(b)(1), 12(b)(6), and 56 of the Federal Rules of Civil Procedure. Defendant moves pursuant to Rule 12(b)(1) and 12(b)(6) to dismiss plaintiff’s claim concerning the alleged failure to hire him for the Manufacturing Engineer position in April 2004, since this event occurred prior to October 26, 2004, and therefore, occurred more than 300 days before plaintiff filed his EEOC complaint on August 22, 2005. As for the remaining three claims, which arise from incidents occurring after October 26, 2004, defendant contends that it is entitled to summary judgment because plaintiff cannot establish a prima facie case of age discrimination, since he cannot show that he was qualified for the positions. Alternatively, defendant contends that even if plaintiff can establish a prima facie case, he cannot demonstrate a triable issue of fact as to whether defendant’s proffered reasons for not hiring him are false and a pretext for discrimination.

In his response to defendant’s motion, plaintiff does not dispute that incidents occurring prior to October 26, 2004 are time barred. Plaintiff maintains, however, that as to the three positions for which he was turned down after October 26, 2004, he has established a prima facie case of discrimination. He further maintains that there are triable issues of fact as to whether defendant’s proffered reasons for declining to hire him are false and pre-textual, and alternatively, he requests the opportunity to conduct unspecified discovery on that point. As proof of pretext, plaintiff has not identified any

direct evidence of age-discriminatory animus. However, he contends that defendant's reasons are unworthy of belief because: 1) except for discriminatory animus, there is no legitimate reason why defendant would not have interviewed him for the Manufacturing Engineer and Senior PC Technician positions; 2) defendant did not always follow its stated policy of seeking to hire employees from within the company; 3) defendant never explained to him why he wasn't hired; 4) it wasn't reasonable, from a business perspective, for defendant not to hire him, since it would have been cheaper to do so; 5) when he was interviewed, the interviews were not fair. Regarding this last reason, plaintiff contends, for example, that he was not given adequate notice of the interviews, and that the interviews were rushed.

Plaintiff, proceeding pro se, and defendant, through its counsel, appeared before the undersigned for oral argument on November 30, 2006. At that time the Court specifically asked plaintiff what discovery he needed in order to more fully respond to defendant's motion. Plaintiff replied that he wanted to obtain notes made by Wallace and Merlau during their interviews of him. The Court has thoroughly considered the parties' written submissions and the comments made during oral argument.

## ANALYSIS

The ADEA prohibits discrimination on the basis of age. 29 U.S.C. § 623. At the outset, it is well settled that claims of age discrimination under the ADEA, to be actionable, must be filed with the EEOC within 300 days of the date that the unlawful practice occurred. 29 U.S.C. § 626(d); *Holowecki v. Federal Exp. Corp.*, 440 F.3d 558, 562 (2d Cir. 2006) ("[T]he charge must be filed within . . . 300 days after the alleged unlawful practice occurred."). A motion to dismiss under 29 U.S.C. § 626(d) is not

jurisdictional in nature, however, and should be made under Rule 12(b)(6), and not Rule 12(b)(1). *Id.* at 565 ("We construe the district court's ruling as a dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) rather than a dismissal for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1). Rule 12(b)(1) does not apply because the ADEA's time limits, which are subject to equitable modification, are not jurisdictional in nature.") (citations omitted). In this case, plaintiff admits that he learned that defendant was not hiring him for the Manufacturing Engineer position prior to October 26, 2004, which was more than 300 days before he filed his EEOC complaint. Accordingly, plaintiff's claim concerning the Manufacturing Engineer's position is dismissed with prejudice, pursuant to 29 U.S.C. § 626(d).

The Court will now consider defendant's motion for summary judgment as to the remaining three instances of alleged discrimination. The standard for granting summary judgment is well established. Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See, Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). "[T]he movant must make a prima facie showing that the standard for obtaining summary judgment has been satisfied." 11 MOORE'S FEDERAL PRACTICE, § 56.11[1][a] (Matthew Bender 3d ed.). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant may satisfy this burden by pointing to an absence of evidence to support an essential element of the nonmoving

party's claim." *Gummo v. Village of Depew*, 75 F.3d 98, 107 (2d Cir. 1996)(*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)), *cert denied*, 517 U.S. 1190 (1996). Once that burden has been established, the burden then shifts to the non-moving party to demonstrate "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). To carry this burden, the non-moving party must present evidence sufficient to support a jury verdict in its favor. *Anderson*, 477 U.S. at 249.[2] The parties may only carry their respective burdens by producing evidentiary proof in admissible form. FED. R. CIV. P. 56(e). The underlying facts contained in affidavits, attached exhibits, and depositions, must be viewed in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Summary judgment is appropriate only where, "after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party." *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir.1993).

Courts must be "particularly cautious about granting summary judgment to an employer in a discrimination case when the employer's intent is in question. Because direct evidence of an employer's discriminatory intent will rarely be found, affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination." *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir.1997)(citations and internal quotations omitted). However, a plaintiff may not defeat

---

[2]It is well settled that the party opposing summary judgment may not create a triable issue of fact "merely by submitting an affidavit that disputes his own prior sworn testimony." *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996)(citations omitted). Rather, such affidavits are to be disregarded. *Mack v. United States*, 814 F.2d 120, 124 (2d Cir. 1987)(citations omitted).

a motion for summary judgment merely by relying upon "purely conclusory allegations of discrimination, absent any concrete particulars." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985), *cert. den*. 474 U.S. 829.

Moreover, where, as here, "the non-moving party is proceeding pro se, the court must interpret that party's supporting papers liberally, that is, interpret them to raise the strongest arguments that they suggest." *Forsyth v. Federation Employment and Guidance Serv.*, 409 F.3d 565, 569 (2d Cir. 2005) (Citation and internal quotation marks omitted).

When a party is unable to produce affidavits in opposition to a summary judgment motion, he may make an application pursuant to Rule 56(f), which states:

> **When Affidavits are Unavailable**. Should it appear from the affidavits of a party opposing the motion [for summary judgment] that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

FED. R. CIV. P. 56(f). In this Circuit, the requirements for obtaining relief under Rule 56(f) are as follows:

> [A] party resisting summary judgment on the ground that it needs discovery in order to defeat the motion must submit an affidavit showing '(1) what facts are sought [to resist the motion] and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts.

*Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 303 (2d Cir. 2003) (citations omitted).

A district court's decision to deny a request for additional discovery under Rule

56(f) is reviewed on appeal using the "abuse of discretion" standard. *Gualandi v. Adams*, 385 F.3d 236, 244 -245 (2d Cir. 2004). However, in this regard, it is clear that as a general rule, summary judgment is strongly disfavored where the non-moving party has had no opportunity to conduct discovery. *Trammell v. Keane*, 338 F.3d 155, 161 (2d Cir. 2003) ("[O]nly in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery.") (*quoting Hellstrom v. U.S. Dep't of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000); *see also, Abercrombie & Fitch Stores, Inc. v. American Eagle Outfitters, Inc.*, 280 F.3d 619, 627 (6th Cir. 2002) ("If the non-movant makes a proper and timely showing of a need for discovery, the district court's entry of summary judgment without permitting him to conduct any discovery at all will constitute an abuse of discretion.").

The Second Circuit has indicated that a Rule 56(f) application should ordinarily be granted, and discovery allowed, where the party opposing summary judgment has not had an opportunity for discovery:

> Fed.R.Civ.P. 56(f) provides, as interpreted by court opinions, that when a party facing an adversary's motion for summary judgment reasonably advises the court that it needs discovery to be able to present facts needed to defend the motion, the court should defer decision of the motion until the party has had the opportunity to take discovery and rebut the motion. Accordingly, we have held that summary judgment should only be granted if *after discovery*, the nonmoving party has failed to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof.

*Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d at 303 (emphasis in original; citations and internal quotation marks omitted). One district court noted, in connection with a Rule 56(f) application, that

> [t]here is a critical distinction . . . between cases where a litigant opposing a motion for summary judgment requests a stay of that motion to conduct *additional* discovery and cases where that same litigant opposes a motion for summary judgment on the ground that it is entitled to an opportunity to *commence* discovery.

*Crystalline H2O, Inc. v. Orminski*, 105 F.Supp.2d 3, 6 -7 (N.D.N.Y. 2000) (emphasis in original).

On the other hand, courts have granted summary judgment prior to discovery in several cases. For example, in *Burt v. Rumsfeld*, 354 F.Supp.2d 156 (D.Conn. 2005), the court granted summary judgment prior to any discovery, because the party opposing summary judgment failed to produce any facts to support its case:

> This court is conscious of the principle that the grant of summary judgment prior to discovery is not to be undertaken lightly. *See, e.g., Hellstrom v. U.S. Dept. of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir.2000) (district court may grant summary judgment without discovery "[o]nly in the rarest of cases"); *Trebor Sportswear Co., Inc. v. The Limited Stores, Inc.*, 865 F.2d 506, 511 (2d Cir.1989); *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 303-04 (2d Cir.2003). However, when a party "fails to produce any specific facts whatsoever to support [their case], a district court may, in its discretion, refuse to permit discovery and grant summary judgment." *Contemporary Mission, Inc. v. United States Postal Service*, 648 F.2d 97, 107 (2d Cir.1981) (dismissing plaintiff's conspiracy allegation without discovery). "An opposing party's mere hopes that further evidence may develop prior to trial is an insufficient basis upon which to justify the denial of [a summary judgment motion]." *Id*. at 107 (quotation omitted). The object of discovery is not to find out if a party has a claim or defense, but to develop a factual basis for its claim or defense. *See Paddington Partners v. Bouchard*, 34 F.3d 1132, 1138 (2d Cir.1994).

*Id*. at 161-162. Similarly, in *Natsource LLC v. GFI Group, Inc.*, 332 F.Supp.2d 626, 637-638 (S.D.N.Y. 2004), the court granted summary judgment prior to any discovery, stating:

> [Plaintiff] has sought to resist summary judgment because there has been no discovery. However, the absence of discovery alone does not

> necessarily bar summary judgment. *Connecticut Nat'l Bank v. Trans World Airlines, Inc.*, 762 F.Supp. 76, 79 (S.D.N.Y.1991) (holding that the court was not precluded from entering summary judgment due to the fact that no discovery had been conducted). Where a non-movant simply relies on bare allegations, dismissal is appropriate prior to discovery. *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 251 (2d Cir.1985). For example, the *Eastway* court dismissed an antitrust claim, stating that "[a] bare assertion that evidence to support a fanciful allegation lies within the exclusive control of the defendants, and can be obtained only through discovery, is not sufficient to defeat a motion for summary judgment." 762 F.2d at 251 (citations omitted). An "opposing party's facts must be material and of a substantial nature, not fanciful, frivolous, gauzy, spurious, irrelevant, gossamer inferences, conjectural, speculative, nor merely suspicions." 6 J. MOORE, FEDERAL PRACTICE ¶ 56.15(3) at 56-486 to 65-487 (2d ed.1976) (cited by *Contemporary Mission Inc. v. U.S. Postal Serv.*, 648 F.2d 97, 107 n. 14 (2d Cir.1981)).

*Id*. at 637 -638. And, in *Connecticut Nat. Bank v. Trans World Airlines, Inc.*, 762 F.Supp. 76, 79 (S.D.N.Y. 1991), the court granted summary judgment prior to any discovery, explaining:

> [Defendant's] first contention is that it has not been afforded an adequate opportunity to conduct discovery and, therefore, we should not yet address the merits of this dispute. We recognize that barely a month has passed since the filing of the complaint and that no discovery has been conducted. In addition, we acknowledge that courts generally are reluctant to grant summary judgment when the non-moving party has not had an adequate opportunity for discovery. This by no means is a prohibition on the entry of judgment at this stage. As the Second Circuit Court of Appeals has recognized, the opposing party must submit an affidavit explaining, inter alia, the facts that are sought, how they are to be obtained and, perhaps most importantly, how these facts are expected to create a genuine issue of material fact. *See Hudson River Sloop Clearwater, Inc. v. Department of the Navy*, 891 F.2d 414, 422 (2d Cir.1989). [Defendant] has not met this burden. With one exception, [defendant] has not suggested any additional evidence that it needs to obtain, but instead, simply suggests that it is too soon to entertain a summary judgment motion, especially on a matter as important as this one. That is insufficient.

*Id*. at 79.

With these general principles of law in mind, the Court will consider plaintiff's age discrimination claims. To establish a prima facie case of discrimination under the ADEA, a plaintiff must show four things: (1) he is a member of the protected class; (2) he is qualified for his position; (3) he has suffered an adverse employment action; and (4) the circumstances surrounding that action give rise to an inference of discrimination. *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466-67 (2d Cir. 2001) (citations omitted), *cert den.* 534 U.S. 993 (2001). Discrimination claims such as the instant one are analyzed using the three-tier burden-shifting test "set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and its progeny." *Valentine v.Standard & Poors*, 50 F.Supp.2d 262, 281-82 (S.D.N.Y. 1999)(Citations and internal quotations omitted), *aff'd*, 205 F.3d 1327 (2d Cir. 2000); *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d at 466. Under the first tier of the *McDonnell Douglas* test, the plaintiff must establish a prima facie case.[3] If the plaintiff establishes a prima facie case,

> the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employee's discharge [or other adverse employment action]. At this stage, the employer need only articulate--but need not prove-- the existence of a nondiscriminatory reason for its decision. If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted, and the factual inquiry proceeds to a new level of specificity. Once defendant meets its burden of production, the burden shifts back to plaintiff. Under the third tier of the *McDonnell Douglas* test, plaintiff bears the ultimate burden of proving that the reason proffered by the employer is a pretext for unlawful discrimination. In order to survive a motion for summary judgment,

[3]It is clear that "the burden of proof that must be met to permit an employment-discrimination plaintiff to survive a summary judgment motion as the prima facie stage is *de minimis*." *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d Cir. 1994) (emphasis in original, citation and internal quotation marks omitted).

> plaintiff must establish a genuine issue of material fact as to whether the employer's reason . . . is false and as to whether it is more likely that a discriminatory reason motivated the employer to make the adverse employment decision.

*Valentine*, 50 F.Supp.2d at 281-82 (Citations and internal quotations omitted); *see also, Terry v. Ashcroft*, 336 F.3d 128, 137-38 (2d Cir. 2003).

At the third tier of the McDonnell Douglas test, simply proving that the employer's proffered reason was false may, or may not, establish the required proof of discriminatory intent:

> The ultimate question is whether the employer intentionally discriminated, and proof that "the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason is correct. In other words, it is not enough to disbelieve the employer; the factfinder must believe the plaintiff's explanation of intentional discrimination.

*James v. New York Racing Ass'n*, 233 F.3d 149, 156 (2d Cir. 2000) (*quoting Reeves v. Sanderson Plumbing Prods. Inc.*, 120 S.Ct. 2097, 2108-09 (2000)). In this regard, "[t]he relevant factors . . . include the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports or undermines the employer's case." *Id*. (internal quotation marks omitted).

In the instant case, even assuming that plaintiff has established a prima facie case, which is admittedly easy to do, he has not come forward with evidence that defendant harbored any bias toward him specifically because of his age. At most, he relies upon his own subjective belief, which is insufficient. *See, Jones v. Potter*, No. 01-CV-0546E(SC), 2004 WL 625276 at *5 (W.D.N.Y. Feb. 2, 2004) ("[P]laintiff's subjective belief and assertion that he was more qualified for the position of Associate

Supervisor does little to support an inference that defendant's decision not to select him for an interview was due to his age or race.") (*citing Hines v. Hillside Children's Ctr.*, 73 F.Supp.2d 308, 320 (W.D.N.Y.1999)); *Robertson v. Mylan Laboratories, Inc.*, 176 Vt. 356, 374, 848 A.2d 310, 325 - 326 (Vt. 2004) ("A plaintiff's opinion that she was more qualified than the person who was hired for the job she sought is insufficient to raise a genuine issue of fact as to whether the reasons given for the hiring decision were pretextual.") (*citing Lee v. GTE Florida, Inc.*, 226 F.3d 1249, 1255 (11th Cir.2000)) (internal quotation marks omitted); *see also, Jugueta v. Perry*, No. 95 CIV. 10303 (DC), 1997 WL 742535 at *6 (S.D.N.Y. Dec. 1,1997) (""The interviewers' lack of eye contact with plaintiff during the interview is nothing more than 'metaphysical' speculation by the plaintiff. Without more, such speculation does not constitute evidence sufficient to defeat a summary judgment motion.") (citation omitted).

On the other hand, the pro se plaintiff has not had an opportunity to conduct discovery, and, in that regard, seeks only the notes made by Wallace and Merlau when they interviewed him. While it is highly unlikely that such notes will contain evidence of age-based discriminatory animus, the burden on defendant to produce them, assuming that they even exist, is relatively small. Consequently, the Court will stay defendant's summary judgment in order to allow limited discovery of the interview notes, as set forth more fully below.

CONCLUSION

For the reasons discussed above, defendant's application to dismiss plaintiff's claim concerning the Manufacturing Engineer position, pursuant to 29 U.S.C. § 296(d), is granted, and that claim is dismissed with prejudice. Defendant's application for

summary judgment as to the remaining claims is stayed temporarily, to allow limited discovery as follows: Defendant shall, on or before **December 22, 2006**, provide plaintiff and the Court with any notes made by Wallace or Merlau during their interviews with plaintiff concerning the Network Systems Technician position and the Engineering Technician position. Plaintiff shall then submit to the Court, on or before **January 2, 2007**, a supplemental response to defendant's summary judgment motion explaining how, if at all, such discovery creates a triable issue of fact in this case. The Court will then issue a further written Decision and Order.

So Ordered.

Dated: Rochester, New York
December 11, 2006

ENTER:

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge