UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

TIMOTHY P. GRAY,

                              Plaintiff,          No. 06-CV-6028 CJS

   -vs-

                                               DECISION AND ORDER

GARLOCK SEALING TECHNOLOGIES, LLC,

                              Defendant.

_____

APPEARANCES

For plaintiff:               Timothy P. Gray, Pro Se
                                35 Carriage Court
                                Farmington, New York 14425

For defendant:            Peter A. Jones, Esq.
                                Subhash Viswanathan, Esq.
                                Bond, Schoeneck & King, PLLC
                                One Lincoln Center
                                Syracuse, New York 13202

INTRODUCTION

     This is an action in which the plaintiff Timothy Gray ("plaintiff"), proceeding *pro se*, alleges that his former employer, defendant Garlock Sealing Technologies, LLC ("defendant") discriminated against him, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, by failing to promote him. Now

before the Court is defendant's motion [#3] for summary judgment. For the reasons that follow, defendant's application is granted and this action is dismissed.

BACKGROUND

Unless otherwise noted, the following are the facts of this case, viewed in the light most favorable to plaintiff. Defendant, which is headquartered in Palmyra, New York, is a manufacturer of fluid sealing products, including seals and gaskets. For reasons that will be discussed further below, it is significant to note that defendant's Equal Employment Opportunity Policy stated, in relevant part, that "[i]t shall be the Company's policy, as warranted, to promote internally those employees whose past work performance demonstrates their qualification for promotion." Defendant contends in this action, however, that it "does not give any preference to current Company employees over external candidates in filling salaried positions. In all circumstances, the Company's goal is to hire the most qualified applicant for the position, regardless of whether the applicant is a current employee or an external applicant." (Def. Stmt. of Facts ¶ 7). Defendant hired plaintiff in 2003 as a Press Operator. Two months later, defendant promoted plaintiff to the position of "Gylon technician/Calendar operator," which plaintiff describes as "an unskilled and lower paying production job." (Pl. Stmt. of Facts ¶ 3). During the ensuing two years that plaintiff was employed with defendant, he applied for four different positions or promotions with defendant.

First, in April 2004, plaintiff applied for the position of Manufacturing Engineer in defendant's Gylon Department. The job posting for this position indicated that defendant was seeking an applicant who possessed a "BS degree in Engineering or equivalent." Plaintiff applied for the position, though he did not hold a bachelor's

degree. Instead, his application indicated that he held three associate's degrees, consisting of an associate's degree in Industrial Technology, an associate's degree in Computer Science, and an associate's degree in Computer Information Systems. (Pl. Aff. [#13] p. 20). Plaintiff's resume, though, indicated that he held only two associate's degrees, those being in Computer Science and Electrical Engineering Technology. (*Id*. at p. 21). Plaintiff further stated on his application that he had four years of experience working as a metal fabricator, and had taken courses in electricity, machining, heating and air conditioning, plumbing, and masonry. Plaintiff's resume indicated that he had work experience as a "Mechanical Maintenance Technician" and as a "Power Plant Technician." With regard to the Mechanical Maintenance Technician's position, plaintiff's resume stated that, for approximately one year, he performed maintenance on production and material handling machinery, tested and maintained equipment involving "security, safety and environmental responsibility of the plant," and assisted an engineering department in "redesigning and fabricating any of the plant's existing equipment in addition to installing any newly acquired machinery." As for the Power Plant Technician's position, plaintiff's resume stated that, for approximately six years, he had worked for an electric and gas utility company, where he "maintained and calibrated the plant's instrumentation and automated control systems," "performed testing on the turbine/generators and their associated sub-systems," and "assisted the plant (and the company) in meeting both Federal and State mandated environmental requirements for air and water."

      Defendant did not interview or hire plaintiff for the Manufacturing Engineer position. Defendant contends that it did not select plaintiff for an interview because he

did not possess a BS degree in engineering or the equivalent.  Instead, defendant interviewed four individuals, all of whom "possessed at least a BS degree in Engineering and had extensive experience working in an engineering capacity." (Hurley Aff. ¶ 6).  The person who was eventually awarded the position, in July 2004, held a BS degree in Mechanical Engineering and "had nearly ten years of experience working for two manufacturing companies in various engineering functions, including Manufacturing Engineer and Quality Control Engineer. (Hurley Aff. ¶ 9, Ex. E).  In short, defendant contends that it hired the more qualified person, and that it did not consider plaintiff's age in making this employment decision.

Plaintiff applied for a second position, that of a Network Systems Technician, in August 2004.  The job posting for the position indicated that defendant was seeking applicants with the following qualifications: "Degree in computer related field or equivalent expertise.  Field certifications for specific technology/vendor tracts, 4+ years providing server and network services, experience supporting a regionally diverse IT network in a manufacturing environment, strong analytical and problem solving skills, and excellent communication skills."  When plaintiff applied for this position, he submitted essentially the same resume as before, except that he had added two associate's degrees to the resume, namely, an associate's degree in Computer Information Systems and an associate's degree in Computer Technology and Networking.  Plaintiff stated on his application, that he had "over 5 years of employment as a field service technician with Decision Data Corporation performing computer repair," although this information did not appear on his resume.  Defendant's Information Technology Manager, Ed Wallace ("Wallace"), reviewed plaintiff's

application and concluded that he did not have the necessary work experience for the position. (Wallace Aff. ¶ 5) (Noting that plaintiff had not indicated "that he had the requisite field certifications or that he had ever worked in the IT field."). According to Wallace, he had decided not to interview plaintiff, until he heard from defendant's Human Resources Specialist, Dawn Wick ("Wick"), that plaintiff "continued to make inquiries about the position and continued to ask why he was not being granted an interview." (*Id*. at ¶ 7). Wallace states that because of plaintiff's interest in the position, and to "assist [plaintiff] in understanding the type of work experience and qualifications that he would need in order to obtain [such] a position," he interviewed plaintiff. Wallace maintains, however, that the interview only confirmed his opinion that plaintiff was not qualified. For example, Wallace states that in response to specific hypothetical questions that he posed, plaintiff gave vague answers that did not demonstrate technical knowledge or problem-solving ability (*Id*. at ¶ 8), though plaintiff denies this. Defendant eventually hired an individual for the position who held a BS degree in Information Technology, was a "Microsoft Certified Professional," and who had "over five years of work experience in the IT field." (*Id*. at ¶ 9). According to Wallace, this individual had already worked for defendant as a contractor for nine months, during which time Wallace had received several positive comments about the individual's technical expertise and "people skills." (*Id.*). Defendant maintains that it hired the most qualified individual and did not consider plaintiff's age in making this employment decision. Plaintiff learned that he was not hired for position on or about October 29, 2004. (Pl. Memo of Law ¶ 7).

In December 2004, plaintiff applied for a third position, that of Engineering

Technician in defendant's Klozure Dynamic Seals Department. Defendant's job listing for the position indicated that applicants were required to have the following experience: "Associate's Degree or equivalent experience. 5 years or more experience in technical role. Must have a high level of energy, excellent organizational , communication and computer skills. Individuals must have excellent technical problem solving skills. Must be a team player." (Merlau Aff. Ex. A). Plaintiff stated on his application that he held an Associate's degree in Electrical Engineering, had "5+ years" of experience in metal fabrication and maintenance, "6+ years" of experience as a power plant technician, and "various computer related degrees (computer science/info. systems, etc.) completion of various adult education (B.O.C.E.S. night) courses." Plaintiff did not submit a resume along with the application. (Merlau Aff. ¶ 7; Pl. Aff. pp. 30-31). Tom Merlau ("Merlau"), the Engineering Manager of the Klozure Dynamic Seals Department, states that, based upon plaintiff's application, he did not believe that plaintiff was qualified for the position. Merlau decided, nonetheless, to interview plaintiff, "to find out more information about his work experience and qualifications." (Merlau Aff. ¶ 5). Merlau interviewed plaintiff on December 15, 2004, and states that, "It was clear to me during the interview that Mr. Gray did not have sufficient experience in process development or process improvement to effectively perform the functions of the Engineering Technician position. Furthermore, Mr. Gray's response [sic] to my questions showed a lack of problem solving skills." (Merlau Aff. par 6). Merlau explains, however, that he scheduled a second interview with plaintiff, because plaintiff had not provided a resume with his application or at the initial interview, and because he wanted "to ensure that [he] had all of the information [he] needed regarding [plaintiff's] work experience and qualifications."

(*Id*. at ¶ 7). Merlau states that the second interview did not change his opinion that plaintiff was unqualified for the position. Defendant eventually granted the position to an individual with a BS degree in Mechanical Engineering Technology and "nine years of work experience on manufacturing lines, applying lean manufacturing techniques." (*Id*. at ¶ 8). Notably, this individual was already employed by defendant as a Production Supervisor. Defendant informed plaintiff of its decision on or about January 17, 2005. Once again, defendant contends that it hired the most qualified individual, and did not consider plaintiff's age in making this employment decision.

Plaintiff applied for a fourth position, as a Senior PC (Personal Computer) Technician, in defendant's IT (Information Technology) Department in March 2005. Defendant's job listing for the position indicated that applicants were required to have the following experience:

> Associate's Degree in Computer Science or equivalent expertise. Field certifications for specific technology/vendor tracks required (i.e. MS Certifications[)] Experience supporting IT in a manufacturing environment. Eight plus years providing PC and network services to a nationally dispersed business operation. Strong analytical and problem solving skills, and excellent communication skills.

(Wallace Aff. Ex. F). Defendant's application for the position listed his four associate's degrees, and further stated that he had "over 5 years of employment with Decision Data Corporation as a field service technician performing computer repair." (Wallace Aff. Ex. G). Plaintiff did not submit a resume with his application. (Wallace Aff. ¶ 15; Pl. Aff. p. 34). Wallace, who had previously interviewed plaintiff for the Network Systems Technician position, states that he declined to interview plaintiff for this new position because he determined that plaintiff was not qualified. Defendant eventually awarded

the position, in July 2005, to an individual with a BS degree in Information Technology, who "was Microsoft certified for XP, and had substantial work experience in the IT Departments of three different companies." (Wallace Aff. ¶ 18).  This individual had been employed by defendant as a temporary employee for several months by the time she was selected for the Senior PC Technician position in July 2005.  Defendant contends that it did not consider plaintiff's age in making this employment decision.

On or about August 8, 2005, plaintiff voluntarily resigned his employment with defendant.  Plaintiff filed a complaint of age discrimination with the Equal Employment Opportunity Commission ("EEOC") on August 22, 2005.  The EEOC dismissed the complaint and issued plaintiff a "right to sue" letter on November 8, 2005.

Plaintiff commenced the subject action on January 17, 2006, alleging that defendant discriminated against him on the basis of his age by failing to promote him on the four occasions discussed above.  Defendant waived service of the summons and complaint on March 30, 2006.  In lieu of answering the complaint, and prior to any discovery in this action, defendant filed the subject motion, designated as a motion "pursuant to Rules 12(b)(1), 12(b)(6), and 56 of the Federal Rules of Civil Procedure," on May 2, 2006.[1]  Defendant moved pursuant to Rule 12(b)(1) and 12(b)(6) to dismiss plaintiff's claim concerning the alleged failure to hire him for the Manufacturing Engineer position in April 2004, since this event occurred prior to October 26, 2004, and therefore, was more than 300 days before plaintiff filed his EEOC complaint on August 22, 2005.  As for the remaining three claims, which arise from incidents occurring after

---

[1] Defendant served an *Irby* notice on the *pro se* plaintiff as required by Rule 56.2 of the Local Rules of Civil Procedure.

October 26, 2004, defendant argues that it is entitled to summary judgment because plaintiff cannot establish a prima facie case of age discrimination, since he is unable to show that he was qualified for the positions.  Alternatively, defendant contends that even if plaintiff could establish a prima facie case, he could not demonstrate a triable issue of fact as to whether defendant's proffered reasons for not hiring him were false and a pretext for discrimination.  In support of the motion, defendant submitted various materials outside of the complaint, including affidavits and exhibits.

      Plaintiff responded by submitting his own affidavit and various exhibits, in which he does not dispute that incidents occurring prior to October 26, 2004 are time barred. Plaintiff maintains, however, that as to the three positions for which he was turned down after October 26, 2004, he has established a prima facie case of discrimination.  He further maintains that there are triable issues of fact as to whether defendant's proffered reasons for declining to hire him were false and pre-textual.  Although plaintiff does not identify any direct evidence of age-discriminatory animus, he contends that defendant's reasons are unworthy of belief and pre-textual because: 1) except for discriminatory animus, there was no legitimate reason why defendant would not have interviewed him for the Manufacturing Engineer and Senior PC Technician positions; 2) defendant had not always followed its stated policy of seeking to hire employees from within the company; 3) defendant never explained to him why he hadn't been hired; 4) it wasn't reasonable, from a business perspective, for defendant not to have hired him, since it would have been cheaper to do so; 5) when he was interviewed, the interviews were not fair.  Regarding this last reason, plaintiff contends, for example, that he had not been given adequate notice of the interviews, and that the interviews were rushed.

Alternatively, plaintiff requests the opportunity to conduct unspecified discovery in the hope that it would produce evidence of discriminatory animus.

The Court heard oral argument on November 30, 2006, at which time plaintiff, proceeding pro se, and defendant, through its counsel, appeared.  At that time the Court specifically asked plaintiff what discovery he needed in order to more fully respond to defendant's motion.  Plaintiff replied that he wanted to obtain notes made by Wallace and Merlau during their interviews of him.  The Court subsequently issued a Decision and Order [#20] which granted defendant's application to dismiss plaintiff's claim concerning the Manufacturing Engineer position as time-barred, pursuant to 29 U.S.C. § 296(d).  As for plaintiff's remaining claims, the Court stayed defendant's summary judgment motion to allow plaintiff to conduct limited discovery.  Specifically, the Court directed defendant to produce, on or before December 22, 2006, any notes made by Wallace or Merlau during their interviews with plaintiff concerning the Network Systems Technician position and the Engineering Technician position.  The Court further directed plaintiff to submit, on or before January 2, 2007, a supplemental response to defendant's summary judgment motion explaining how, if at all, such discovery created a triable issue of fact in this case.

Defendant subsequently notified plaintiff that it had searched its files and found no evidence of notes having been taken by Wallace or Merlau during the interview process.  Nonetheless, defendant provided plaintiff with its "Job Opening Files related to the filling of the Network Systems Technician and Engineering Technician positions." Plaintiff filed a supplemental response [#21] to the summary judgment motion on December 29, 2006. In this response, plaintiff begins by indicating that it was not his

intention, during oral argument, to state that Wallace's and Merlau's notes were the only discovery that he was seeking, and that he still wishes to conduct additional discovery. For example, he states that he wishes to obtain his employee file, because he believes it "should contain multiple documents needed to help contradict statements made by the defendant in some of [its] pleadings," though he does not identify the documents. (Supp. Resp. [#21], p. 1). He further states that he wants to obtain the testimony of "a number of . . . former coworkers, and even certain supervisors, whose testimony would be very beneficial to [him] in the support of [his] case." (*Id*.).

Plaintiff then explaines why he thinks that defendant's motion should be denied based upon the current record. Essentially, plaintiff believes that there were "unusual events surrounding each of [his] failed attempts at promotion," which suggest an intent to discriminate against him. (Supp. Resp. [#21] p. 2). Notably, plaintiff's perception of those events as "unusual" is based upon his understanding of defendant's Equal Employment Opportunity Policy, which he refers to as "the company's promotion policy." As already mentioned, that policy stated, in relevant part, that "[i]t shall be the Company's policy, as warranted, to promote internally those employees whose past work performance demonstrates their qualification for promotion." In plaintiff's view, this statement created an obligation on defendant's part to hire from within, even when there were candidates outside the company who were more qualified. For example, plaintiff states:

> [N]ew hires are basically told that as long as they show up when they are supposed to, properly perform their assigned job, and abide by Garlock's various policies; the company will in turn provide compensation to the employee and enforce both mandated and other applicable policies (such as their promotion policy). Mutual acceptance of these considerations

> could be viewed as establishing a contract of employment between the two parties.
>
> ***
>
> I have previously been employed by at least one other company with a policy similar to the one at Garlock for promoting their existing employees. At New York State Electric and Gas Corporation (NYSEG) it was known as Advancement Opportunity Program or AOP. The problem with not having or [not] properly administering one of these advancement policies is that little or no internal promoting may result. This is because there is usually very little difficulty in finding at least one person from outside the company, with qualifications that may even surpass those desired, who would be willing to accept the position for an acceptable amount of compensation. Therefore, a promotion policy is designed to 'level the playing field' for the existing internal applicants by having their qualifications examined prior to conducting a search outside of the company. With AOP, an external search for candidates to fill company job openings would only take place if none of the existing employees applied for the position or if all of the ones that did apply were found to be unsuitable for the job.

(Supp. Resp. [#21] pp. 2-3). Plaintiff does not claim that he was the most qualified applicant for any of the positions. Nonetheless, he maintains that he should have been promoted even though, for example, Blachowski was more qualified for the Network Technician position:

> Had I been competing against Jason Blachowski (the person hired as Garlock's Network Technician) as one of the other outside applicants, or else if Jason had been applying as another internal candidate like myself; then I could understand and accept the company's hiring decision. But since neither of these two scenarios actually occurred, and because Jason is considerably younger than I am; age appears to have been the motivating factor behind his hiring.

(*Id*. at 6).

ANALYSIS

The standard for granting summary judgment is well established. Summary

judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).  A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See, Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  "[T]he movant must make a prima facie showing that the standard for obtaining summary judgment has been satisfied." 11 MOORE'S FEDERAL PRACTICE, § 56.11[1][a] (Matthew Bender 3d ed.).  "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant may satisfy this burden by pointing to an absence of evidence to support an essential element of the nonmoving party's claim." *Gummo v. Village of Depew*, 75 F.3d 98, 107 (2d Cir. 1996)(*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)), *cert denied*, 517 U.S. 1190 (1996).  Once that burden has been established, the burden then shifts to the non-moving party to demonstrate "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e);  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  To carry this burden, the non-moving party must present evidence sufficient to support a jury verdict in its favor. *Anderson*, 477 U.S. at 249.  The parties may only carry their respective burdens by producing evidentiary proof in admissible form. FED. R. CIV. P. 56(e).  The underlying facts contained in affidavits, attached exhibits, and depositions, must be viewed in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).  Summary judgment is appropriate only where, "after drawing all reasonable inferences

in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party." *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir.1993).

Courts must be "particularly cautious about granting summary judgment to an employer in a discrimination case when the employer's intent is in question. Because direct evidence of an employer's discriminatory intent will rarely be found, affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination." *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir.1997)(citations and internal quotations omitted). However, a plaintiff may not defeat a motion for summary judgment merely by relying upon "purely conclusory allegations of discrimination, absent any concrete particulars." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985), *cert. den*. 474 U.S. 829.

Moreover, where, as here, "the non-moving party is proceeding pro se, the court must interpret that party's supporting papers liberally, that is, interpret them to raise the strongest arguments that they suggest." *Forsyth v. Federation Employment and Guidance Serv.*, 409 F.3d 565, 569 (2d Cir. 2005) (Citation and internal quotation marks omitted).

When a party is unable to produce affidavits in opposition to a summary judgment motion, he may make an application pursuant to Rule 56(f), which states:

> **When Affidavits are Unavailable**. Should it appear from the affidavits of a party opposing the motion [for summary judgment] that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

FED. R. CIV. P. 56(f).  In this Circuit, the requirements for obtaining relief under Rule 56(f) are as follows:

> [A] party resisting summary judgment on the ground that it needs discovery in order to defeat the motion must submit an affidavit showing '(1) what facts are sought [to resist the motion] and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts.

*Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 303 (2d Cir. 2003) (citations omitted).  A district court's decision to deny a request for additional discovery under Rule 56(f) is reviewed on appeal using the "abuse of discretion" standard. *Gualandi v. Adams*, 385 F.3d 236, 244 -245 (2d Cir. 2004).

With these general principles of law in mind, the Court will consider plaintiff's age discrimination claims.  The ADEA prohibits discrimination on the basis of age. 29 U.S.C. § 623.  To establish a prima facie case of discrimination under the ADEA, a plaintiff must show four things: (1) he is a member of the protected class; (2) he is qualified for his position; (3) he has suffered an adverse employment action; and (4) the circumstances surrounding that action give rise to an inference of discrimination. *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466-67 (2d Cir. 2001) (citations omitted), *cert den.* 534 U.S. 993 (2001).  Discrimination claims such as the one here are analyzed using the three-tier burden-shifting test "set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and its progeny." *Valentine v.Standard & Poors*, 50 F.Supp.2d 262, 281-82 (S.D.N.Y. 1999)(Citations and internal quotations omitted), *aff'd*, 205 F.3d 1327 (2d Cir. 2000); *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d at 466.  Under the first tier of the *McDonnell Douglas* test, the

plaintiff must establish a prima facie case.[2]  If the plaintiff establishes a prima facie case,

> the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employee's discharge [or other adverse employment action].  At this stage, the employer need only articulate--but need not prove-- the existence of a nondiscriminatory reason for its decision. If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted, and the factual inquiry proceeds to a new level of specificity.  Once defendant meets its burden of production, the burden shifts back to plaintiff. Under the third tier of the *McDonnell Douglas* test, plaintiff bears the ultimate burden of proving that the reason proffered by the employer is a pretext for unlawful discrimination.  In order to survive a motion for summary judgment, plaintiff must establish a genuine issue of material fact as to whether the employer's reason . . .  is false and as to whether it is more likely that a discriminatory reason motivated the employer to make the adverse employment decision.

*Valentine*, 50 F.Supp.2d at 281-82 (Citations and internal quotations omitted); *see also,* *Terry v. Ashcroft*, 336 F.3d 128, 137-38 (2d Cir.  2003).

At the third tier of the *McDonnell Douglas* test, simply proving that the employer's proffered reason was false may, or may not, establish the required proof of discriminatory intent:

> The ultimate question is whether the employer intentionally discriminated, and proof that "the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason is correct.  In other words, it is not enough to disbelieve the employer; the factfinder must believe the plaintiff's explanation of intentional discrimination.

*James v. New York Racing Ass'n*, 233 F.3d 149, 156 (2d Cir. 2000) (*quoting Reeves v.*

---

[2] It is clear that "the burden of proof that must be met to permit an employment-discrimination plaintiff to survive a summary judgment motion as the prima facie stage is *de minimis*." *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d Cir. 1994) (emphasis in original, citation and internal quotation marks omitted).

*Sanderson Plumbing Prods. Inc.*, 120 S.Ct. 2097, 2108-09 (2000)).  In this regard, "[t]he relevant factors . . . include the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports or undermines the employer's case." *Id*. (internal quotation marks omitted).

At the outset, plaintiff's request to conduct additional discovery pursuant to Rule 56(f) is denied.  Construing plaintiff's papers liberally, as the Court is required to do, plaintiff still has not satisfied the requirements of Rule 56(f), as set forth above.  As one example, plaintiff indicates that he wishes to obtain from defendant a copy of his college transcripts that he provided to defendant during one of his interviews. (Supp. Resp. [#21] p. 6).  Plaintiff does not explain why he does not simply obtain the transcripts from his college himself, or why the transcripts are relevant to the subject motion.  In short, plaintiff has not demonstrated that the discovery he seeks is reasonably likely to create a triable issue of fact.

Turning to the merits of the case, the Court finds that, even assuming that plaintiff has established a prima facie case, which is admittedly easy to do, he has not come forward with evidence that defendant harbored any bias toward him specifically because of his age.  First, it is clear that plaintiff's mere subjective belief that he was discriminated against is insufficient to create a triable issue of fact. *See, Jones v. Potter*, No. 01-CV-0546E(SC), 2004 WL 625276 at *5 (W.D.N.Y. Feb. 2, 2004) ("[P]laintiff's subjective belief and assertion that he was more qualified for the position of Associate Supervisor does little to support an inference that defendant's decision not to select him for an interview was due to his age or race.") (*citing Hines v. Hillside*

*Children's Ctr.*, 73 F.Supp.2d 308, 320 (W.D.N.Y.1999)); *see also*, *Jugueta v. Perry*, No. 95 CIV. 10303 (DC), 1997 WL 742535 at *6 (S.D.N.Y. Dec. 1,1997) ("The interviewers' lack of eye contact with plaintiff during the interview is nothing more than 'metaphysical' speculation by the plaintiff. Without more, such speculation does not constitute evidence sufficient to defeat a summary judgment motion.") (citation omitted).

Moreover, the Court finds that defendant's "hiring policy" did not create any "contract of employment" between the parties, nor did it require defendant to promote less-qualified applicants from within the company. Plaintiff's contrary interpretation of that "policy" is, frankly, not a reasonable one.[3] In any event, defendant's policy would have no bearing on the decision not to promote plaintiff to the Engineering Technician's position, since the person who was hired for that position was already an employee of Garlock.

Furthermore, even assuming that plaintiff has demonstrated triable issues of fact as to certain matters, such as why he was granted a second interview for the Engineering Technician's position, or whether Merlau had a copy of his resume during the first interview for that position (Supp. Resp. [#21] at p. 8), he has not shown that defendant's reasons for not promoting him are false and that discriminatory animus was the real reason for those decisions. That is, he has not come forward with evidence to refute defendant's explanation that it hired the best-qualified individuals for the

---

[3] The ADEA statute is concerned with age discrimination. It is not concerned with a company's hiring practices that are unrelated to age discrimination. Consequently, even assuming that plaintiff was correct in believing that defendant was under some self-imposed obligation to hire from within, without regard to the superior qualifications of an outside candidate, he would still not prevail on this motion, since, at most, he would have shown that defendant violated its policy by hiring a more-qualified candidate from outside the company. Such a showing would not suggest that defendant's age played any role in the decision.

positions. Consequently, plaintiff has not met his burden under the third step of the *McDonnell Douglas* analysis, and defendant is therefore entitled to summary judgment.

CONCLUSION

For the reasons discussed above, defendant's application for summary judgment [#3] is granted, and this action is dismissed.

So Ordered.

Dated: Rochester, New York
　　　　January 26, 2007

ENTER:


/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge